IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: GEICO CUSTOMER DATA BREACH LITIGATION, | |
| | CIVIL ACTION NO. |
| MICHAEL VISCARDI, KATHLEEN DORETY, and WILLIAM MORGAN, Movants, | 1:25-cv-628-SEG-CMS |
| v. | UNDERLYING ACTION pending in the United States District Court for the Eastern District of New York, No. 1:21-cv-2210-KAM-SJB |
| LEXISNEXIS RISK SOLUTIONS, INC., Respondent, | |

## ORDER

The above-styled matter is before the Court on the Motion to Compel Compliance with Deposition and Document Subpoenas Issued to Third Party LexisNexis Risk Solutions ("LNRS") ("Motion to Compel") filed by Movants Michael Viscardi, Kathleen Dorety, and William Morgan (collectively, "Movants") [Doc. 1]. For the reasons below, I will **DENY** the Motion to Compel.

## I.    BACKGROUND

### A.    The Underlying Action

The United States District Court for the Eastern District of New York issued the subpoenas in an action styled *In re: GEICO Customer Data Breach Litigation*,

No. 21-cv-2210-KAM-SJB ("Underlying Action"). [Doc. 1-1, Decl. of Kate M. Baxter-Kauf "Baxter-Kauf Decl." ¶¶ 1, 3–4]. In the Underlying Action, Movants, on behalf of themselves individually and on behalf of a proposed class, sued Government Employees Insurance Company d/b/a GEICO, GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company (collectively, "GEICO"). [*Id.* ¶ 2]. Movants' claims in the Underlying Action arise from GEICO's marketing and sales of its insurance policies through its website. [*Id.* ¶ 4]. In the Underlying Action, Movants allege that GEICO structured its online sales platform to auto-populate protected, sensitive driver's license information. [Underlying Action, Doc. 110, First Am. Consol. Compl. ¶¶ 6–8]. According to Movants, GEICO made this sensitive information publicly available after entry of only a bare minimum of other publicly available information about an individual—such as name and approximate address—into GEICO's website. [*Id.*].

Movants claim that GEICO knowingly added this auto-population feature to its online quoting process to make motor vehicle record information easily accessible to anyone who entered basic information into GEICO's system. [First Am. Consol. Compl. ¶ 8]. According to Movants, GEICO failed to impose security protocols to ensure that website visitors entered and accessed personal information ("PI") only about themselves. [*Id.*]. Movants allege that GEICO instead made motor vehicle records, PI, and driver's license information publicly available. [*Id.*].

According to Movants, identity thieves mined GEICO's website and obtained private drivers' license information for hundreds of thousands of consumers, including Movants.  [First Am. Consol. Compl. ¶ 9].  On April 9, 2021, GEICO issued a Notice of Data Breach to affected victims, informing them that "fraudsters used information about you – which they acquired elsewhere – to obtain unauthorized access to your driver's license number through the online sales system on our website."  [*Id.* ¶ 10].  GEICO acknowledged that this information "could be used to fraudulently apply for unemployment benefits" under the victims' names.  [*Id.*].

Movants allege that after GEICO disclosed their drivers' license numbers ("DLNs") to criminals (the "Data Disclosure"), they received notifications from the New York Department of Labor stating that fraudulent unemployment claims had been filed in their names after the Data Disclosure.  [First Am. Consol. Compl. ¶ 11].  According to Movants, they also experienced other instances of identity theft related to the Data Disclosure.  [*Id.*].

In the Underlying Action, Movants seek relief under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2724.  [First Am. Consol. Compl. ¶¶ 133–49].  Movants also assert claims for negligence and negligence per se, and they seek declaratory and injunctive relief.  [First Am. Consol. Compl. ¶¶ 150–89].

## B.    GEICO's Relationship with LNRS

LNRS has a contractual relationship with GEICO that permits GEICO to use certain LNRS products, including LNRS's Auto Data Prefill ("ADPF") product. [Doc. 2-3, Dep. of Victor Bayus "Bayus Dep." at 120–21, 146].[1] The ADPF product is intended to streamline the consumer insurance application process. [*Id.* at 42–43].

The ADPF process works like this. First, consumers submit personal identifying information ("PII"), such as their names and addresses, to GEICO to start an insurance quote. [Bayus Dep. at 266–68]. GEICO then sends the consumer-submitted PII to LNRS, and LNRS attempts to append a LexID—a unique identifier that LNRS assigns to each individual and uses to associate records with that individual—to the PII. [*Id.*]. If LNRS can append a LexID to the PII, LNRS will identify certain PII associated with that LexID, including a DLN if available, and it may return the information to GEICO. [*Id.*]. DLNs provided by LNRS may have been obtained from various sources. [*Id.* at 161]. According to LNRS, it cannot determine the source of DLNs that it returns in response to an inquiry subject in ADPF. [*Id.* at 272–73].

---

[1] Citations to the record are made to the CM/ECF heading at the top of the page cited, except for depositions, where the citations are to the page number of the hard copy deposition transcript.

###### C.    The Subpoenas and the Motion to Compel

In November 2023, Movants issued a deposition and document subpoena to LNRS.  [Baxter-Kauf Decl. ¶ 4; Doc. 8-2, Decl. of Julie H. Smith "Smith Decl." ¶ 4].  In February 2024, Movants issued an amended document subpoena to LNRS.  [Baxter-Kauf Decl. ¶ 5; Smith Decl. ¶ 5; Doc. 1-5].  The Motion to Compel relates to the amended document subpoena.  [Baxter-Kauf Decl. ¶ 5].

On June 10, 2024, Movants served an amended deposition subpoena on LNRS.  [Baxter-Kauf Decl. ¶ 7; Doc. 1-7].  On August 30, 2024, Movants served a second amended deposition subpoena on LNRS.  [Baxter-Kauf Decl. ¶ 8; Doc. 1-8].  The Motion to Compel relates to the second amended deposition subpoena.  [Baxter-Kauf Decl. ¶ 8].

On October 15, 2025, Victor Bayus, a corporate representative for LNRS, appeared for a deposition.  [Baxter-Kauf Decl. ¶ 10; Smith Decl. ¶ 12].  As discussed below, Movants argue that Bayus was not sufficiently prepared to testify on all of the deposition topics listed in the amended deposition subpoena.

On January 28, 2025, Movants filed their Motion to Compel.  [Doc. 1].  Movants seek an order to compel LexisNexis to produce (1) the documents and data sought in the amended document subpoena and (2) a witness who is sufficiently prepared to testify on certain deposition topics listed in the second amended

deposition subpoena.  [Doc. 1 at 1–2, Doc. 1-2 at 26].  Movants and LNRS have

fully briefed the motion.  [Doc. 1; Doc. 7; Doc. 12].

## II.  <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, and

it states:

> Unless otherwise limited by court order, the scope of discovery is as
> follows: Parties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense and proportional
> to the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance of
> the discovery in resolving the issues, and whether the burden or expense
> of the proposed discovery outweighs its likely benefit.  Information
> within this scope of discovery need not be admissible in evidence to be
> discoverable.

FED. R. CIV. P. 26(b)(1).  Boundaries exist, however, and a court can limit discovery

if it determines that:

> (i)     the discovery sought is unreasonably cumulative or duplicative,
> or can be obtained from some other source that is more convenient, less
> burdensome, or less expensive;
> (ii)    the party seeking discovery has had ample opportunity to obtain
> the information by discovery in the action; or
> (iii)   the proposed discovery is outside the scope permitted by Rule
> 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

Federal Rule of Civil Procedure 45 governs discovery from non-parties,

including the right to command a non-party to attend a deposition and produce

documents.  FED. R. CIV. P. 45.  "The scope of information that may be sought via a

Rule 45 subpoena is the same as the scope of discovery generally allowable pursuant to Rule 26(b)." *TQP Dev. LLC v. Alaska Air Grp., Inc.*, No. 1:12-cv-3065-AT-JSA, 2012 WL 13128182, at *1 (N.D. Ga. Nov. 28, 2012). "Thus, discovery from non-parties is subject to the cost-benefit limitations set out in [Federal Rule of Civil Procedure] 26(b)(2)." *Id.*

"When ruling on motions to compel under Rule 45, courts apply a balancing test, weighing the probative value of the [discovery] sought against the burden of complying with the subpoena." *TQP Development LLC*, 2012 WL 13128182, at *1. Courts consider several factors, including "the relevance of the information requested, the requesting party's need for the [information], the breadth of the [discovery] request, the time period covered by the request, and the burden imposed, including the expense and inconvenience to a non-party to whom a request is made." *Id.*

Rule 45 also "specifically imposes on the issuer of the subpoena an affirmative duty to avoid imposing undue burden or expense on the non-party." *TQP Development LLC*, 2012 WL 13128182, at *2 (citing FED. R. CIV. P. 45(c)). "This duty reflects a balancing between the litigants' need to obtain information from non-parties and the need to protect outsiders to the litigation from having to incur[] undue burden or expense." *Id.* "Thus, where the requested information can also be

obtained from a party, courts have taken a more restrictive approach to compelling Rule 45 discovery from a non-party." *Id.*

"'The proponent of a subpoena . . . must frame a reasonable and limited directive that seeks only what is actually relevant and least intrusive." *Steel, LLC v. Archer Western Constr., LLC*, No. 1:21-cv-2109-SCJ, 2022 WL 18460461, at *1 (N.D. Ga. Sept. 30, 2022) (quoting *United States ex rel. Mohanty v. S. Ga. Rehab, Inc.*, No. 2:02-cv-71-WCO, 2005 WL 8157452, at *6 (N.D. Ga. Sept. 1, 2005)). "'The burden of proof in demonstrating that compliance with a subpoena presents an undue burden lies with the party opposing the subpoena; however, the party seeking to enforce a subpoena bears the burden of demonstrating that the request is relevant.'" *Id.* (quoting *Martin v. De Wafelbakkers LLC*, No. 113cv02529TCB-RGV, 2014 WL 12042549, at *1 (N.D. Ga. Jan. 8, 2014)).

"'In order to determine whether a subpoena imposes an undue burden, the Court must balance the requesting party's need for the discovery against the burden imposed upon the subpoenaed party.'" *Steel, LLC*, 2022 WL 18460461, at *1 (quoting *Martin*, 2014 WL 12042549, at *1). A court may also consider "the expense and inconvenience to a nonparty." *Feingold v. Cardinale*, No. 22-cv-20375-ALTMAN/REID, 2023 WL 4763149, at *4 (S.D. Fla. Apr. 24, 2023).

III. **DISCUSSION**

A. **The Amended Document Subpoena**

Movants seek an Order compelling LNRS to respond to Document Requests Nos. 3 and 7 from the amended document subpoena. [Doc. 1-2 at 11]. The amended document subpoena provided that unless otherwise indicated, "[t]he relevant time period for each Request" was "from January 1, 2016, through the date of responses." [Doc. 1-5 at 12]. Document Request No. 3 sought:

> All Documents sufficient to identify every driver's license number GEICO requested from You and/or You provided to GEICO, and for each such driver's license number, all Documents providing the following information requested from, or provided by, GEICO and/or that You provided to GEICO: (a) the number of times GEICO requested each individual's driver's license from You; (b) the date(s) GEICO requested the driver's license number from You; (c) whether You provided the driver's license number to GIECO and, if so, on what date(s); (d) the number of times You provided the individual's driver's license number to GEICO; (e) GEICO's purpose for requesting that You provide the driver's license number; (f) Whether GEICO displayed pre-filled, auto-populated, or otherwise displayed (hereinafter, "Displayed") the driver's license number on GEICO's website, including but not limited to on its public-facing Instant Quote Website; (g) All of the individual's information that You ultimately provided to GEICO, including but not limited to their: (i) Date of birth; (ii) First & last name; (iii) Full address (including zip code); (iv) Social Security number; (v) Military affiliation; (vi) Billing address; (vii) VIN; (viii) Driver's license state; (ix) Driver's license number; (x) Internet Protocol address (commonly referred to as IP address); (xi) Whether GEICO issued an insurance policy to the individual and, if so, the date it did so; (xii) The claimed permissible use(s) – including but not limited to those listed in 18 U.S.C. § 2721(b) – for which GEICO requested, obtained, Displayed, and/or used the driver's license number; [and] (h) any records from GEICO outlining GEICO's claimed permissible use on a per-request basis.

[*Id.* at 13–14].  LNRS responded:

> **OBJECTIONS TO REQUEST NO. 3:** LNRS objects to this Request
> to the extent it is overbroad, including as to time, unduly burdensome,
> not proportional to the needs of this case, and seeks documents that are
> not relevant to any party's claims or defenses.  This request seeks *all*
> documents "sufficient to identify every driver's license number GEICO
> requested from [LNRS] and/or [LNRS] provided to GEICO" over more
> than an 8-year time period regardless of whether those requests are
> relevant to Plaintiff's claims.  LNRS objects to this Request to the
> extent that it seeks documents or information available to Plaintiffs by
> requesting the information from GEICO, a party to the Civil Action.
> Indeed, documents and communications between LNRS and GEICO
> related to GEICO's requests would be in GEICO's possession.
> Plaintiffs have not demonstrated that they first sought discovery from
> GEICO before burdening LNRS, a non-party.  LNRS further objects to
> the extent the Request seeks confidential documents that cannot be
> disclosed absent GEICO's consent.  LNRS further objects to the extent
> this Request is duplicative of Request No. 1.

[Doc. 1-6 at 4–5].

Document Request No. 7 sought production of "[d]ocuments sufficient to

show the database or source from which the information provided by You to GEICO

came."  [Doc. 1-5 at 14].  LNRS objected to this request, stating:

> LNRS objects to this Request to the extent that the phrases "database
> or source" and "information provided by You to GEICO" are vague and
> ambiguous.  LNRS objects to this Request to the extent it is overbroad,
> including as to time, not proportional to the needs of this case, and seeks
> documents that are not relevant to any party's claims or defenses,
> including because it apparently seeks documents regarding any
> "database or source" from which any information provided by LNRS
> to GEICO over more than an 8-year time period came.

[Doc. 1-6 at 7].

Movants argue that the above requests seek information from LNRS about the data sought by GEICO and returned by LNRS for each member of the class who was provided notice of the Data Disclosure by GEICO (approximately 135,272 individuals) and that this information "is integral" to their claims in the Underlying Action. [Doc. 1-2 at 7]. According to Movants, they are attempting to obtain data from LNRS that reflects the source from which LNRS obtained the data that LNRS provided to GEICO. [*Id.* at 7–8]. Movants state that they "have narrowed the information they seek pursuant to [Document Requests Nos. 3 and 7] to three categories of information." [Doc. 1-2 at 13]. The information includes: (1) Auto Data Prefill Data ("ADPF"), (2) header files, and (3) DMV motor records files. [*Id.* at 13–20]. I will discuss those categories of information in turn.

## 1.    ADPF

ADPF is a product that LNRS sells to GEICO, and it provides driver's license information and other motor vehicle records information to be auto populated in GEICO's online quoting platform. [Doc. 1-2 at 13]. According to Movants, the ADPF information and data are central to their claims against GEICO. [*Id.* at 14]. Movants state that LNRS offered to produce the following information for ADPF transaction results for the approximately 135,272 individuals who were notified of the Data Disclosure by GEICO: (1) the DLN/state returned to GEICO and (2) the date of the transaction. [*Id.*]. Movants, however, want LNRS to produce four

additional fields: (a) Social Security Number ("SSN"), (b) date of birth ("DOB"), (c) current address, and (d) the product results identifying the product used.  [*Id.*].

In response, LNRS argues that the requested ADPF data is irrelevant, unreasonably cumulative, and duplicative.  [Doc. 8-1 at 12].[2]  LNRS does not dispute, for purposes of the Motion to Compel, "that certain information LNRS may have returned to GEICO in the ADPF product and GEICO then subsequently unilaterally chose to introduce into their online sales system was exposed to unauthorized users" in the Data Disclosure.  [*Id.*].  LNRS, however, argues that this does not make the data relevant and discoverable.  According to LNRS, GEICO does not dispute that each of the individuals who were notified of the Data Disclosure were the subject of an ADPF transaction, and Movants do not need the additional ADPF data to prove that an ADPF transaction occurred.  [Doc. 8-1 at 12–13; Smith Decl. ¶ 14].

LNRS also argues that Movants' requests seek irrelevant information because (1) they focus on PII inputted by GEICO, not the results of ADPF transactions that LNRS sent to GEICO [Doc. 8-1 at 14], (2) the Underlying Action focuses on GEICO's disclosure of LNRS, not SSNs, DOBs, addresses, and product results [*id.*

---

[2] According to LNRS, on August 5, 2024, it offered to produce two fields (DLN/state and transaction date) for the 135,272 individuals GEICO notified of the Data Disclosure, "if available regarding the inquiry subject that was previously returned to GEICO in an ADPF transaction."  [Smith Decl. ¶ 11].

at 16], and (3) the product results field data would not identify the source of the data produced by LNRS [*id.* at 17; Smith Decl. ¶ 18]. LNRS points out that the request for product results might implicate concerns about protecting consumer information and require LNRS to obtain permission from the consumers before producing the information. [Doc. 8-1 at 18 n.8]. Alternatively, LNRS argues that the requests for ADPF data impose an undue burden on LNRS because producing the extra data would require LNRS to institute a complex data development process that could take six months, require at least 360 business hours of work, and cost as much as $43,200. [Doc. 8-1 at 14–16; Doc. 8-4, Decl. of Prabhu Sadasivam "Sadasivam Decl. I" ¶¶ 5–12].

In their reply, Movants argue that they need the ADPF data to match up the class list with the transactions to show that disclosures took place and to determine the sources of the underlying information. [Doc. 13 at 2–3]. Movants also contend that the data is relevant to their claims because it will show what information GEICO disclosed about the class, how LNRS and GEICO share information, and the circumstances under which GEICO disclosed PII. [*Id.*]. According to Movants, the SSN, DOB, current address, and product results fields are relevant because GEICO's auto data prefill program disclosed SSNs. [Doc. 13 at 4]. Movants also claim that DOBs and address information are inputs that were used to retrieve the driver's license information, even if they were incorrectly inputted. [*Id.*]. Movants argue

that "product results are relevant to source information and useful to link up ADPF data, header file data, and MVRs." [*Id.* at 4–5]. As for confidentiality, Movants contend that there is already a protective order in place in the Underlying Litigation and that they will be happy to meet and confer about records governed by the FCRA. [*Id.* at 5 n.2]. Movants also argue that producing the ADPF data will not unduly burden LNRS because the claimed costs are only employee costs and "are a reasonable component of responding to a subpoena" [*id.* at 6], and no factors support shifting the costs of producing the data to Movants [*id.* at 7].

For the reasons below, I will deny the motion to compel as to the other fields sought for the ADPF data (SSN, DOB, address, and product results). First, the other fields appear to be of limited relevance. Those fields are not needed to match up individuals with ADPF transactions because GEICO does not dispute that all those individuals were the subjects of ADPF transactions. The other fields also have limited relevance because Movants' arguments about inputs focus on information provided by GEICO, not the results of ADPF transfers that LNRS sent to GEICO. Further, Movants' contention that the product field results would show the source of the information that LNRS returned appears to be incorrect. Likewise, Movants' request for SSNs and DOBs has minimal relevance because Movants' claims in the Underlying Action focus on disclosure of DLNs, not SSNs and DOBs. The relevancy factor thus weighs in favor of denying the motion to compel.

14

The second factor—need for the information—is at best neutral.  Although Movants may be correct that the other fields belong to LNRS and are not available from GEICO, Movants' need for this information is questionable given its limited relevance.

The third factor—the breadth of the requests—also counsels against compelling LNRS to produce the other fields.  The requests, as propounded, seek data over an eight-year period and are not restricted to the time frame surrounding the Data Disclosure.  And, as discussed above, the requests seek information that does not appear to be clearly relevant to Movants' claims in the Underlying Action.  Moreover, at least some of the information sought would be subject to confidentiality concerns, and LNRS might need to obtain consumer consent to produce it.

The fourth factor—the burden imposed on LNRS—weighs in favor of denying the motion to compel.  LNRS has presented evidence (which Movants have not rebutted) showing that producing this information would require LNRS to create a data development product.  LNRS's evidence shows that the data development project would take at least six months and involve about 360 hours of employee time, at a total cost of $43,200.  Contrary to Movants' arguments, the cost of employee time should be considered a burden on LNRS.  Although LNRS may be a profitable business, and Movants' claims in the Underlying Action may be

important, Movants have not shown that imposing these costs on a non-party would be justified.

For the above reasons, I will deny the portion of the motion to compel relating to ADPF data. LNRS, however, should produce the information that it originally offered to produce to Movants: DLN/state information and the date of the transactions.

## 2.    Header Files

Movants also seek to compel LNRS to produce "header files," which are collections of records that attempt to match a natural person with all the records about that person and then assign the person a LNRS-generated ID number. [Doc. 1-2 at 15]. According to Movants, the header files "contain [PII] received from various sources by [LNRS] related to all Class Members who received Notice from GEICO," including data about the sources of DLNs, SSNs, and motor vehicle records. [*Id.*].

LNRS argues that Movants' contentions about the header files are wrong, and the files do not contain information relevant to the source of the DLNs disclosed in the Data Disclosure. [Doc. 8-1 at 18]. According to LNRS, the header files include PII of individuals compiled from multiple sources, and they may include DLNs that might be returned to GEICO in the ADPF product under certain circumstances. [Doc. 8-1 at 18; Bayus Dep. at 156, 270–71]. LNRS, however, contends that "the

header files do *not* identify a specific record or source that was picked to be used in an ADPF transaction." [Doc. 8-1 at 18 (emphasis in original); Bayus Dep. at 156, 272]. LNRS also argues that the header files can change monthly. [Doc. 8-1 at 19; Bayus Dep. at 159]. According to LNRS, although the header files include a current view of an individual, there is no way to tell whether the records in the header files today were associated with the individual in the past. [Doc. 8-1 at 19; Bayus Dep. at 159–60]. LNRS also states that "even if a [DLN] was returned to GEICO in ADPF during the data breach timeframe, the header files do not identify which [DLN] (the DMV or non-DMV sourced numbers) was available to be used at that time." [Doc. 8-1 at 19–20]. Alternatively, LNRS argues that producing the header files would unduly burden it by requiring it to devote at least two weeks of work to develop a process to produce the data. [Doc. 8-1 at 20; Doc. 8-3, Decl. of Kevin Wilmoth "Wilmoth Decl." ¶¶ 4–9]. Finally, LNRS points out that because the header files contain sensitive information, producing those files may raise consumer consent or notice concerns. [Doc. 8-1 at 21 n.10].

In their reply, Movants argue that the "[h]eader files are relevant because they identify the *universe* of records and sources for data that may be returned by ADPF transactions." [Doc. 13 at 8 (emphasis in original)]. Movants claim that these files are relevant to "whether information was sourced from a motor vehicle record."

[*Id.*].  Movants also argue that producing the information will cost LNRS only $6,400 in employee time and will not unduly burden LNRS.  [*Id.* at 9].

For the reasons below, I will deny the motion to compel as to the header files. First, the first factor—relevance—weighs against granting the motion.  Although Movants argue that the header files contain a collection of records that will provide information about the sources of the information returned by GEICO, the evidence indicates otherwise.  LNRS's Rule 30(b)(6) witness testified that the header files do not contain information relating to the source of the DLN information.  [Bayus Dep. at 156, 272].  Instead, the header files contain PI compiled from multiple sources, and they do not identify a particular record or source.  [*Id.*].  And the information contained in the header files changes as often as each month.  [*Id.* at 159].  Thus, there is no way to know whether the header files that LNRS has today contain the same information as they contained when the Data Disclosure occurred.  [*Id.* at 159– 60].  Given the speculative nature of the information contained in the header files, those files have little, if any, relevance to Movants' claims in the Underlying Action.

The second factor—Movants' need for the information—is at best neutral. Although the header files may not be available from any source other than LNRS, Movants' need for the header files is questionable given their limited relevance.

The third factor—breadth of the requests—weighs against granting the motion to compel.  Again, Movants seek information covering an eight-year period, rather

than information surrounding the time of the Data Disclosure. Moreover, at least some of the information contained in the header files would be subject to confidentiality concerns, and LNRS might be required to obtain consent from consumers to produce that information.

The fourth factor—the burden imposed—also does not weigh in Movants' favor. LNRS presented unrebutted evidence that producing the header files would require LNRS to dedicate two weeks of employee time to the effort, at a cost of around $6,400. [Wilmoth Decl. ¶¶ 4–9]. Although Movants argue that this cost is not unduly burdensome to a company of LNRS's size, Movants fail to justify imposing this cost on a non-party, especially given the limited relevance of the information.

For the reasons above, the relevant factors do not weigh in favor of requiring LNRS to produce the header files. I will deny this portion of the motion to compel.

### 3.    DMV Records

Movants also seek to compel LNRS to produce DMV motor vehicle record files. According to Movants, LNRS provided DMV records to GEICO both in connection with the online quoting process and with other LNRS services and GEICO records requests to LNRS. [Doc. 1-2 at 16]. Movants argue that "the Data Disclosure may have disclosed [LNRS]-provided DMV records that GEICO obtained during the online quote process, or which were provided to and stored by

GEICO before that process." [*Id.* at 16–17]. Movants want the Court to require LNRS to "produce all DMV Motor Records data for the individuals GEICO notified of the Data Disclosure, whether or not specifically requested by GEICO during the relevant time period, because that information is relevant to the sources from which [LNRS] obtains data," and the records are covered by the DPPA. [*Id.* at 17]. According to Movants, they "seek the data as evidence that [LNRS] sought it from [] motor vehicle records or another source, or that [LNRS] sent it to GEICO about [Movants] and other people who received Notice from GEICO about the Data Disclosure." [*Id.* at 19]. Movants argue that "[t]his information plainly is relevant to [their] claims." [*Id.*].

LNRS responds that this information is not relevant. First, LNRS states that it "assumes [Movant's] reference to 'DMV Motor Records Files' refers to Motor Vehicle Reports (or 'MVRs'), which are reports that can be obtained from certain state DMVs." [Doc. 8-1 at 21 n.11]. According to LNRS, Movants now want it "to produce records of all inquiries submitted by any consumer for an MVR for the 135,272 individuals that resulted in a 'hit' over an unlimited period of time," but Movants "offer no evidence or explanation for why that requested data is relevant to the *GEICO ADPF transactions* at issue here." [*Id.* at 22 (emphasis in original)]. Alternatively, LNRS argues that producing the information is unduly burdensome because LNRS would have "to initiate a data development project to build and run

a search query to attempt to identify MVR hits for the 135,272 individuals," and the effort would require at least 440 business hours of work and cost about $52,800. [Doc. 8-1 at 22; Doc. 8-5, Decl. of Pradu Sadasivam "Sadasivam Decl. II" ¶¶ 5–11, 12]. Finally, LNRS points out that the request raises consumer privacy concerns and potentially implicates consumer consent or notice issues. [Doc. 8-1 at 23 n.13].

In their reply, Movants argue that MVR information is relevant because GEICO disclosed information that it obtained from LNRS. [Doc. 13 at 10]. According to Movants, even MVRs that LNRS did not return to GEICO are relevant. [*Id.*]. Movants point out that LNRS "uses its LexID process to maintain robust information about all of the people contained within its databases, and uses all that information it seeks from any source to verify and maintain that information each time it gets new information from a different source." [*Id.*]. Movants claim that "all the information is relevant source information and [LNRS's] choice to maintain it that way is relevant to both [Movants'] claims and at class certification." [*Id.*]. According to Movants, LNRS's "connection of state DMV records with other information about persons using LexIDs and verification of that data is also relevant to the source analysis." [*Id.* at 10–11]. Movants also argue that producing the MVRs will not unduly burden LNRS. [*Id.* at 11].

For the reasons below, I will deny the motion to compel as to the DMV motor vehicle record files. The first factor, relevance, weighs against granting the motion

to compel.  The requests seek information concerning all inquiries submitted by any consumer for an MVR for the 135,272 individuals that resulted in a 'hit' over an unlimited period of time, and it is unclear why the requested data is relevant to the GEICO transactions or Movants' claims in the Underlying Action.

The second factor—need for the information—is at best neutral.  Movants may not be able to obtain the information from a source other than LNRS.  Given the limited relevance of the information, however, Movants' need for the information is questionable.

The third factor—breadth—also weighs against requiring LNRS to produce the MVR records.  The requests seek information concerning all inquiries submitted by any consumer for an MVR for the 135,272 individuals that resulted in a 'hit' over an unlimited period of time, and they are not limited in scope to the time period relating to the Data Disclosure.  Moreover, producing the data would present privacy concerns and might raise concerns about consumer consent and notice.

The fourth factor—the burden to LNRS—weighs against requiring LNRS to produce the MVR records.  LNRS produced evidence (which Movants have not rebutted) showing that producing the evidence would require LNRS to initiate a data development project to build and run a search query.  [Sadasivam Decl. II ¶¶ 5–11].  LNRS's evidence shows that this effort could take at least 440 business hours' worth of work and cost approximately $52,800.  [*Id.* ¶¶ 8–9, 12].  Contrary to Movants'

22

arguments, requiring LNRS, a non-party, to incur those costs (and to expend so much employee time on the data development project) would be unduly burdensome.

For the reasons above, I will not compel LNRS to produce the MVR information. This portion of the motion to compel is denied.

## B.    Rule 30(b)(6) Deposition

Movants also seek an Order compelling LNRS to produce a prepared witness to testify about Deposition Topics 1, 10, 13, and 19. [Doc. 1-2 at 20–26]. For the reasons below, I will deny this portion of the motion to compel.

### 1.    Deposition Topics at Issue

Deposition Topic 1 sought information about "[t]he contents of all documents and/or ESI produced pursuant to Schedule A of the Amended Document Subpoena." [Doc. 1-10 at 4]. LNRS responded:

> LNRS objects to this Topic to the extent that the phrase "contents of all documents and/or ESI" is vague and ambiguous. Pursuant to the parties' meet and confers, LNRS has produced documents responsive to [the] Amended Document Subpoena. It is entirely unclear what is meant by "contents" of these documents; the documents speak for themselves.

[Doc. 1-8 at 4].

Deposition Topic 10 requested information concerning "[c]ommunications between You and GEICO concerning or related to GEICO's policies, practices, and/or incidents related to its data security, public-facing Instant Quote Website, the

23

Data Disclosure, and/or other data disclosures or breaches." [Doc. 1-10 at 6].  LNRS

responded:

> LNRS objects to this Topic to the extent that it seeks testimony
> available to [Movants] by requesting the testimony from GEICO, a
> party to the Civil Action.  Indeed, communications "related to GEICO's
> policies, practices, and/or incidents related to its data security, public-
> facing Instant Quote Website, and/or other data disclosures or
> breaches" would be in GEICO's possession.  [Movants] have not
> demonstrated that they first sought discovery from GEICO before
> burdening LNRS, a non-party.  LNRS further objects to the extent the
> Topic seeks testimony about confidential information that cannot be
> disclosed absent GEICO's consent.  LNRS further objects to this Topic
> to the extent [Movants] requested the same information in the Amended
> Document Subpoena, and the Topic was mooted by the parties' meet
> and confers.

[Doc. 1-8 at 11–12 (citation omitted)].

Deposition Topic 13 requested information about "Your contracts and

agreements with GEICO, including but not limited to those related to pre-fill

services, for the whole period of time during which GEICO has contracted with You

related to its Instant Quote Website." [Doc. 1-10 at 7].  LNRS responded:

> LNRS objects to this Topic to the extent it is overbroad, including as to
> time (the request seeks testimony over an unlimited period of time),
> unduly burdensome, not proportional to the needs of this case, and
> seeks testimony that is not relevant to any party's claims or defenses.
> For example, the Topic seeks testimony about *any* agreement with
> GEICO, rather than limiting the scope of the Topic to the agreement
> relating to the auto data prefill services only. . . . LNRS objects to this
> Topic to the extent that it [is] testimony available to [Movants] by
> requesting the testimony from GEICO, a party to the Civil Action.
> Indeed, the testimony related to requests from GEICO to LNRS would
> be in GEICO's possession.  [Movants] have not demonstrated that they
> first sought discovery from GEICO before burdening LNRS, a non-

> party. LNRS further objects to the extent the Topic seeks testimony of
> confidential information that cannot be disclosed absent GEICO's
> consent. LNRS further objects to this Topic to the extent Plaintiffs
> requested the same information in the Amended Document Subpoena,
> and the Topic was mooted by the parties' meet and confers and LNRS'
> subsequent document production[.]

[Doc. 1-8 at 12–13 (emphasis in original) (citations omitted)].

Deposition Topic 19 sought information about "[a]ny instructions you made to or received from GEICO relating to the storage or use of Nonpublic Information, including, but not limited to, driver's license numbers and Social Security numbers."

[Doc. 1-10 at 7]. LNRS responded:

> LNRS objects to this Topic to the extent that the phrase "storage or use"
> is vague and ambiguous. LNRS objects to this Topic to the extent it is
> overbroad, including as to time (the request seeks testimony over an
> unlimited period of time), unduly burdensome, not proportional to the
> needs of this case, and seeks testimony that is not relevant to any party's
> claims or defenses. For example, the Topic seeks testimony relating to
> or concerning any instructions LNRS made to or received from GEICO
> relating to the storage or use of Nonpublic Information over an
> unlimited time period regardless of whether that testimony is relevant
> to [Movants'] claims. LNRS further objects to this Topic to the extent
> that it seeks testimony equally available to [Movants] through
> requesting the testimony from GEICO, a party to the Civil Action.
> Indeed, any instructions made to or received from GEICO would be in
> GEICO's possession. [Movants] have not demonstrated that they first
> sought discovery from GEICO before burdening LNRS, a non-party.
> LNRS also objects to the extent the Topic seeks testimony about
> confidential information that cannot be disclosed absent consent from
> GEICO. LNRS further objects to this Topic to the extent [Movants]
> requested the same information in the Amended Document Subpoena,
> and the Topic was mooted by the parties' meet and confers and LNRS'
> subsequent document production[.]

[Doc. 1-8 at 16–17 (citations omitted)].

### 2.    Discussion

Movants argue that LNRS's Rule 30(b)(6) witness was not prepared to testify on Deposition Topics 1, 10, 13, and 19. [Doc. 1-2 at 23–24].  According to Movants, the witness (1) "knew nothing about audits or of [LNRS's] relationship with GEICO," [*id.* at 24], (2) was "completely unaware of [LNRS's] investigation of the data disclosure that underlies this litigation, or any recommendations made by [LNRS] to GEICO, beyond authenticating the documents produced" [*id.*], and (3) "was basically unaware of the contractual relationship between GEICO and [LNRS]" [*id.*].  Movants argue that "[t]hese questions and topics are clearly relevant to [Movants'] claims and defenses – e.g., whether and how [LNRS] instructed GEICO that the Data Disclosure was a threat and/or happening, whether GEICO was on notice beforehand or should have made changes afterwards, [and] what obligations GEICO has under its contract with [LNRS] to protect driver's license information ad PII."  [*Id.*].

In response, LNRS argues that the Motion to Compel is premature.  [Doc. 8-1 at 23–24; Smith Decl. ¶¶ 16–18].  Alternatively, LNRS argues that the requests for more deposition testimony are improper.  [Doc. 8-1 at 24].  LNRS states that it confirmed in June 2024 that it did not have audit-related documents relating to GEICO's use of ADPF, and Movants responded in July 2024 that there was no current dispute about production of audit-related documents.  [*Id.*].  LNRS

consequently argues that this topic was not at issue for the Rule 30(b)(6) deposition and should be deemed moot.  [*Id.*].

As for Movants' requests for further testimony about LNRS's investigation of the Data Disclosure and any recommendations that LNRS made to GEICO, LNRS argues that these topics are general and vague.  [Doc. 8-1 at 24].  LNRS also contends that the term "recommendations" never appeared in noticed topics for the deposition. [*Id.*].

Finally, as for testimony concerning LNRS's relationship with GEICO and contractual relationships between LNRS and GEICO, LNRS argues that those topics were the subject of extensive testimony during the Rule 30(b)(6) deposition.  [Doc. 8-1 at 25].  According to LNRS, Movants' counsel "reviewed nearly the entire contract" during the Rule 30(b)(6) deposition, and nothing remains for LNRS to testify about with respect to those topics.  [*Id.* at 25; Bayus Dep. at 120–133, 135–56, 172–84].  LNRS argues that Movants fail to identify specific questions for which they seek further testimony.  [Doc. 8-1 at 25].

In their reply, Movants again contend that LNRS's designee was not prepared to testify.  [Doc. 13 at 14].  According to Movants, the designee "could not speak to '[LNRS's] investigation of the data disclosure that underlies this litigation' and 'any recommendations made by [LNRS] to GEICO' related to the [D]ata [D]isclosure." [*Id.*].  Movants also argue that "[w]hen presented with documents about the

investigation, [the] witness could not identify if they were comprehensive or whether [LNRS] made additional—or any—recommendations for GEICO to implement to enhance data security or customer privacy, or to prevent such a disclosure from happening again in the future." [*Id.* at 14–15]. Finally, Movants contend that their motion is not premature. [*Id.* at 15].

Federal Rule of Civil Procedure 30(b)(6) "provides for discovery via oral deposition of an organization." *KKMB, LLC v. Khader*, No. 1:20-cv-3997-JPB-JSA, 2020 WL 13593895, at *2 (N.D. Ga. Oct. 9, 2020). "Rule 30(b)(6) imposes an affirmative duty on the corporation to designate a witness who is able to provide binding answers on behalf of the corporation." *Id.* "'The designated witness must testify not only about the facts within the corporation's 'collective knowledge,' but also about 'the corporation's position, beliefs and opinions.'" *Id.* (quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012)). However, "[a]bsolute perfection is not required for a Rule 30(b)(6) witness." *Peterson v. Aaron's, Inc.*, No. 1:14-cv-1919-TWT, 2017 WL 385923, at *2 (N.D. Ga. Jan. 25, 2017) (internal quotation marks and citation omitted). Applying this standard, I conclude that the motion to compel LNRS to produce additional Rule 30(b)(6) testimony should be denied.

Movants first argue that the Court should require LNRS to present a prepared Rule 30(b)(6) witness to discuss audits of GEICO and LNRS's relationship with

GEICO.  None of the topics that Movants listed in their motion to compel, however, specifically sought testimony concerning audits.  Moreover, LNRS informed Movants that it had no audit-related documents relating to GEICO's use of ADPF. [Doc. 2-2 at 2–3; Doc. 2-5 at 3].  Thus, testimony concerning audits or documents associated with audits was not properly at issue for the Rule 30(b)(6) deposition. And, as discussed below, the Rule 30(b)(6) witness testified at length concerning LNRS's relationship with GEICO.  Movants are not entitled to an order compelling LNRS to produce more testimony relating to audits or audit-related documents or concerning LNRS's relationship with GEICO.

Next, Movants argue that the Rule 30(b)(6) witness was not prepared to testify concerning LNRS's investigation of the Data Disclosure or its recommendations to GEICO.  Again, the terms "investigation" and "recommendations" are not included in the list of topics for which Movants seek to compel testimony.  And those terms are vague and overly broad.  LNRS thus had no obligation to produce testimony concerning those topics, and Movants are not entitled to an order compelling LNRS to do so.

Finally, Movants argue that the Rule 30(b)(6) witness was not prepared to testify about the contractual relationship between GEICO and LNRS.  Movants' counsel, however, reviewed almost the entire contract between GEICO and LNRS during the Rule 30(b)(6) deposition.  [Bayus Dep. at 120–33, 135–56, 172–84].

Movants fail to point to any specific provision of the contract or any contract-related question for which the Rule 30(b)(6) witness was not prepared to testify, and it appears that no testimony remains to be given concerning the contract.  Movants thus have not shown that LNRS failed to produce a prepared Rule 30(b)(6) witness for this topic, and this portion of the motion to compel will be denied.

For the above reasons, Movants are not entitled to an Order compelling LNRS to provide more testimony under Rule 30(b)(6).  I will deny this portion of the motion to compel.

## IV.   <u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** that Movants' Motion to Compel [Doc. 1] is **DENIED.**  The Clerk is **DIRECTED** to terminate the referral of this case to me and to close this case.

**SO ORDERED**, this 17th day of March, 2025.

Catherine M. Salinas
United States Magistrate Judge